# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JESSICA and TRAVIS ELLIS,
on behalf of their minor son, T. J. ELLIS,

        Plaintiffs,

v.   No. CIV 03-1085 ACT/LFG
    Consolidated with
    No. CIV 03-1086 ACT/LFG

RIO RANCHO PUBLIC SCHOOL
DISTRICT, BOARD OF EDUCATION OF
THE RIO RANCHO PUBLIC SCHOOLS,

        Defendants.

---

RIO RANCHO PUBLIC SCHOOLS
BOARD OF EDUCATION,

        Plaintiff,

v.   Also consolidated with
    No. CIV 03-1092 MV/WDS

JESSICA and TRAVIS ELLIS,
on behalf of their minor son, J. T. ELLIS,

        Defendants.

## MEMORANDUM OPINION AND ORDER

      THIS MATTER is before the Court on Defendants' Motion for Protective Order, filed May 11, 2004 [Doc. No. 30]. Defendants' Motion requests that the Court prevent Plaintiffs from

deposing Don Schlicte, the President of the Rio Rancho Board of Education.[1]  That Motion is fully briefed.  [Doc. Nos. 30, 35, 41.]  Plaintiffs filed a related Motion to Compel Mr. Schlicte's deposition, and that motion also is fully briefed.  [Doc. Nos. 33, 36.][2]  After careful consideration of the briefing and pertinent law, the Court grants the Motion for Protective Order and denies the Motion to Compel.  The Court's reasoning is set out below.

### Background

This portion of the opinion is taken from the parties' description of the nature of the case as set out in the Initial Pre-Trial Report.  [Doc. No. 12.]

> This case is a partial appeal from the final IDEA administrative decision of the New Mexico State Department of Education-appointed Administrative Appeal Officer, a claim alleging discrimination based on disability in violation of Section 504 of the Rehabilitation Act and the Americans with Disabilities Act and a Section 1983 claim alleging racial discrimination.  This action [03-1085] has two related actions pending in [this court] . . . .

Plaintiffs contend, in part, that T. J. Ellis was denied a free appropriate public education by Defendant Rio Rancho Schools.  Plaintiffs claim he was discriminated against on the basis of a disability and on the basis of his African American race.  Plaintiffs further assert that the school district ignored and inadequately addressed T. J. Ellis's disability in reading and intentionally mischaracterized him as a behavior problem and thereby discriminated against him because of his

---

[1] Discovery in this case closed on June 3, 2004.  [Doc. No. 32.]  Thus, no further discovery can proceed unless the Court authorizes the deposition of Mr. Schlicte.

[2] Defendants explained to the Court in a letter dated June 23, 2004, that because their Motion for Protective Order and Plaintiffs' Motion to Compel present the identical issue, Defendants' reply in support of their Motion for Protective Order was also intended to be a response to Plaintiffs' Motion to Compel.  It appears that Plaintiffs filed two similar briefs in support of their Motion to Compel, although one of the briefs also opposes Defendants' Motion for Protective Order.  In addition, Plaintiffs filed a separate brief in opposition to Defendants' Motion for Protective Order that appears to be identical to one of their other briefs.  Notwithstanding some confusion about the briefing of these two motions, the Court agrees that the motions address the same issue, and that this matter is adequately briefed for resolution.

disability and race. According to Plaintiffs, Defendants then shortened his day/week and isolated him in a Desert Pathways campus cut off from social contact with peers and adequate instruction in a setting that was physically inferior and lacked comparable educational resources. Specifically, Plaintiffs allege that the Defendants discriminated against T. J. Ellis on the basis of his disability and race, through its personnel actions and policies and procedures. [IPTR, p. 2.]

Defendants deny Plaintiffs' contentions and assert they provided T. J. Ellis with special instruction designed to address his unique needs and specific learning disability. They assert that T.J.'s educational plan was approved by T.J's parent who lauded his progress and improvement. According to Defendants, the school district did not segregate T. J. Ellis, nor discriminate against him in any manner. [IPTR, pp. 3-4.]

## Motion for Protective Order/Motion to Compel

Plaintiffs sought to depose Don Schlicte, the President of Defendant Rio Rancho Board of Education ("the Board"). Defendants filed a Notice of Non-Appearance along with their Motion for Protective Order seeking to prevent the deposition. Defendants observe that Mr. Schlicte, while President of the Board, was not named as a defendant either in his individual or official capacity. Nor has any member of the Board, including Mr. Schlicte, been named as a witness in this action.

Defendants argue that the deposition should be precluded because Mr. Schlicte is entitled to legislative immunity, and that any objective facts which Plaintiffs might need to support their claims should come from other sources. Moreover, Defendants assert that under the doctrine of legislative immunity, Plaintiffs may not inquire into Mr. Schlicte's state of mind.

Plaintiffs respond that legislative immunity is not applicable in this case because they do not seek to make inquiries of Mr. Schlicte's state of mind. Rather, they intend to solicit information

regarding the *administration* of the Board's policies and powers, which is not part of the legislative function of the Board that might be protected by legislative immunity. Specifically, Plaintiffs intend to inquire into the Board's alleged lack of action and oversight concerning the rights of students with disabilities and the Board's alleged noninvolvement and ignorance concerning issues surrounding special education and disability discrimination. Plaintiffs proceed to state the following:

> If written or unwritten policies and practices of the Rio Rancho Schools discriminated against Plaintiff Student on the basis of disability, the Board was the entity which established or sanctioned such policies and practices, and, therefore, Plaintiffs must have access to deposition testimony as to the Board's actions and inactions surrounding the policies and practices of the District which are at issue: those surrounding the creation and implementation of the "Desert Pathways" program. Placement of student T. J. Ellis in the Desert Pathways program violated his rights to be free from discrimination on the basis of race and disability.

[Doc. No. 35, p. 4.]

Defendants assert that according to the pertinent statutory authority, the Board is merely responsible for "developing educational policies" for the school district, not for administering them as to individual students. In addition, Defendants argue that Plaintiffs did not come forward with any evidence showing that the alleged unconstitutional actions of Defendants were the result of a written Board policy, policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers. Moreover, according to Defendants, the superintendent, through his or her staff, is the person responsible for "administering Board policy rather than the Board members or President."[3]

---

[3] In the IPTR, both parties listed the superintendent as a witness.

## Analysis

### Legislative Immunity

The concept of legislative immunity is well established in the Tenth Circuit. Kamplain v. Curry County Board of Commissioners, 159 F.3d 1248, 1250 (10th Cir. 1998) (internal citation omitted). In addition, the United States Supreme Court confirmed that local legislators, like their federal or state counterparts, are entitled to absolute immunity from 1983 liability for the legislative activities. Id. at 1250-51 (internal citation omitted).

The government official seeking immunity bears the burden of demonstrating entitlement to immunity. Id. at 1251. "Legislative immunity thus extends to legislators only when they are acting 'in the sphere of legitimate legislative activity.'" Id. (internal citation omitted). "The key inquiry when determining whether defendants are entitled to legislative immunity is whether the defendants' actions were taken in their 'legislative capacity.'" Rateree v. Rockett, 852 F.2d 946, 950 (7th Cir. 1988). In Kamplain, the Tenth Circuit provided the following discussion regarding legislative immunity for board members:

> In order to determine whether Defendants should be cloaked in legislative immunity, we look to the function that the Board members were performing when the actions took place, . . ., and we examine the nature of those actions. *See* Bogan v. Scott-Harris, 523 U.S. 44, 118 S.Ct. 966, 973 (1998) ("Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it."). . . "'The essentials of the legislative function are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct.'"

159 F.3d at 1251 (internal citations omitted).

Legislative actions are those done "in relation to the business before" the legislative body. Id. "[A]t its core, the legislative function involves determining, formulating, and making policy." Id.

5

"Adopting a general policy or rule sets standards for subsequent administrative decisions in specific cases, and in this instance, guides the exercise of discretion by school administrators. It is essentially a legislative function." East High Gay/Straight Alliance v. Board of Education of Salt Lake City School District, 81 F. Supp. 2d 1199, 1203 (D. Utah 1999)

In contrast, the Tenth Circuit advised that not all actions taken at a legislative meeting or by such a body are legislative for purposes of immunity. Id. Some acts, instead, are essentially administrative in nature. Id. at 1252. "Administrative or executive acts of legislators are not protected." Rateree, 852 F.2d at 950. A board that acts administratively, rather than in its legislative capacity, will not be entitled to legislative immunity. Kamplain, 159 F.3d at 1253. Thus, in Kamplain, the Tenth Circuit ultimately concluded that Defendants (including the Board) were acting in an administrative capacity when they banned that plaintiff's attendance, participation and speech at a commission meeting. Under those circumstances, legislative matters were not implicated, and the Board was not entitled to legislative immunity. Id. *See, e.g.,* Hinsdale v. City Of Liberal, Kan., 19 Fed. Appx. 749, 762, 2001 WL 980781 (10th Cir. Aug. 28, 2001) (*discussing* Kamplain and proposition that a municipality's employment decisions are essentially administrative rather than legislative); East High Gay/Straight Alliance, 81 F. Supp. 2d at 1203, 1204 (ad hoc determination that a particular club or group may or may not meet on school premises was administrative in nature; personal views and underlying motives of legislators in carrying out their legislative role generally fall beyond the reach of judicial scrutiny).

Here, a local school board in New Mexico is granted certain statutory authority. Under § 22-5-4, a local school board shall have certain powers and duties, including to "develop educational policies for the school district;" employ a local superintendent for the school district and fix his salary;

and adopt rules pertaining to the administration of all powers or duties of the local school board. NMSA 1978 § 22-5-4, ¶¶ A, B and K.  However, nothing under § 22-5-4 provides the local school board with the power or authority to administer the rules and policies it develops.

Plaintiffs seek information from the School Board president regarding alleged illegal or discriminatory motivation with respect to school district's failure to provide a specific student with certain educational programs and instructions.  Yet it is undisputed that the School Board had no contact with this student and indeed, no one on the board has been named as a witness in this lawsuit. Essentially, Plaintiffs contend that the administration of certain Board policies or rules resulted in discriminatory acts against this student and perhaps other African American students.

However, there simply is no showing that Board President Mr. Schlicte was responsible for administering any of the individual educational decisions at issue.  Indeed, Defendants assert that the superintendent, through his or her staff, is the person responsible for administering the Board's policies.  Under § 22-5-14, the statute states that the local superintendent "shall carry out the educational policies and rules of the state board and local school board" and "shall administer and supervise the school district."  NMSA 1978 § 22-5-14(A) and (B).

Therefore, to the extent that Plaintiffs seek discovery as to the policy and rule-making acts taken by Mr. Schlicte and the School Board, and/or their state of mind in enacting such policies and rules, that information is protected by legislative immunity.  Furthermore, the Court rejects Plaintiffs' argument that the information actually sought is administrative in nature rather than legislative.  The school board lacks the authority under the pertinent laws of New Mexico to administer its policies. That function is uniquely reserved to the superintendent.  NMSA § 22-5-14(A) and (B).  Accordingly,

the Court concludes that information about the administration of the policies should have been obtained from other sources, e.g., the superintendent and his or her staff.

## **Conclusion**

For the above stated reasons, the Court grants Defendants' Motion for Protective Order and denies Plaintiffs' Motion to Compel the deposition of Mr. Schlicte.

IT IS THEREFORE ORDERED that:

(1) Defendants' Motion for Protective Order [Doc. No. 30] is GRANTED; and

(2) Plaintiffs' Motion to Compel [Doc. No. 33] is DENIED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge