**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

T.J. ELLIS,

        Plaintiff,

vs.                                                                           NO. CIV-03-1085 ACT/LFG
                                                                           consolidated with
                                                                           NO. CIV-03-1086 ACT/LFG

RIO RANCHO PUBLIC SCHOOL
DISTRICT, BOARD OF EDUCATION OF
THE RIO RANCHO PUBLIC SCHOOLS,

        Defendants.


RIO RANCHO PUBLIC SCHOOLS
BOARD OF EDUCATION,

        Plaintiff,

                                                                             and consolidated with
vs.                                                                         NO. CIV-03-1092 ACT/LFG

T.J. ELLIS,

        Defendant.


**MEMORANDUM OPINION AND ORDER**

        THIS MATTER COMES before the Court on the Motion for Summary Judgment by Defendants Rio Rancho Public School District and Board of Education of the Rio Rancho Public Schools for judgment against any and all claims of Jessica Ellis and Travis Ellis (Doc. No. 37). This matter also comes before the Court on the Motion for Summary Judgment by Defendants

Rio Rancho Public School District and Board of Education of the Rio Rancho Public Schools for judgment on the equal protection claims brought by Plaintiff T. J. Ellis in CV 03-1085. (Doc. No. 47).

The Court, having considered the pleadings, the exhibits and the law, finds that both motions are well-taken and will be GRANTED. Summary Judgment is entered in favor of the Defendants and against Plaintiffs Jessica Ellis and Travis Ellis on the Motion for Summary Judgment as to any and all claims of Jessica Ellis and Travis Ellis in CV 03-1085 and CV 03-1086. Jessica Ellis and Travis Ellis will also be dismissed as Defendants in CV 03-1092.

Summary Judgment is entered in favor of the Defendants and against Plaintiff T. J. Ellis on the Motion for Summary Judgment with respect to the Fourth and Fifth Claims of Plaintiff's Complaint in CV 03-1085 alleging violations of equal protection guaranteed by the Constitutions of the United States and New Mexico.

## SUMMARY JUDGMENT

Summary judgment is an integral part of the Federal Rules of Civil Procedure which are intended to "'secure the just, speedy and inexpensive determination of every action'." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (quoting *Russillo v. Scarborough*, 935 F. 2d 1167, 1170 (10th Cir. 1991).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F. 2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories and admissions on file', designate 'specific facts showing that there is a genuine issue for trial'." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## CLAIMS OF JESSICA AND TRAVIS ELLIS

Defendants Rio Rancho Public School District and the Board of Education of the Rio Rancho Public Schools moved for summary judgment as to any and all claims of Jessica and Travis Ellis, the parents of T.J. Ellis. (Doc. No. 37). Plaintiffs have not responded. Plaintiffs Jessica and Travis Ellis originally brought suit on behalf of their minor son, T. J. Ellis, in September, 2003. Defendants have presented evidence that T. J. Ellis was born on January 25, 1986 which now, in September of 2004, means that T. J. has reached his eighteenth birthday.

Having reached the age of majority, T. J. Ellis now has standing to bring these actions which allege violations of his statutory rights under the Individuals with Disabilities Education Act, the Americans with Disabilities Act, the Rehabilitation Act and violations of his civil rights under 42 U.S.C. §1983. His parents Jessica and Travis Ellis did not assert that their own rights had been violated . Jessica and Travis Ellis no longer have standing to assert their son's rights and will be dismissed as parties. The caption of the case will now read <u>T. J. Ellis v. Rio Rancho</u>

Public School District, Board of Education of the Rio Rancho Public Schools in CV 03-1085 and CV 03-1086 and Rio Rancho Public Schools Board of Education v. T. J. Ellis in CV 03-1092.

EQUAL PROTECTION CLAIMS

Defendants Rio Rancho Public School District and Board of Education of the Rio Rancho Public Schools (School District) moved for summary judgment on the Fourth and Fifth Claims of the Complaint in CV 03-1085.  The Fourth Claim of Plaintiff's Complaint alleges that Defendants' actions violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment.  The Fifth Claim of the Complaint alleges a violation of the Equal Protection Clause of the New Mexico Constitution and a violation of the state constitution's guarantee of a free public education in a uniform system sufficient for the education of all children.

Plaintiff's equal protection claims under both the federal and state constitutions are based upon discrimination predicated on race.  Plaintiff is African-American/Hispanic.  Plaintiff alleges that the School District has instituted and maintained a policy and practice that fails to identify and provide a free appropriate education for African-American and Hispanic students and that places African-American and Hispanic students in behavior programs without adequately evaluating their needs for such placement.   Plaintiff alleges that this policy and practice violated his civil rights.  Defendants deny the allegations.

Both parties submitted their numbered undisputed material facts and pointed to those facts that they dispute.  The Court finds that the disputed facts brought forth by both parties are not material to the issue of whether the School District violated Plaintiff's rights under the Equal Protection Clause.  The Plaintiff's disputed facts concern the details of Plaintiff's behavior

4

incidents prior to his placement in the Turn it Around (TIA) and the Desert Pathways (DP) programs, the October 25, 2001 Individualized Education Plan (IEP), the reading class to which Plaintiff was assigned, the criteria for placement in the DP program, the December 19, 2001 IEP, details of the program at DP including Plaintiff's mother's perception and desires, and the January 10, 2003 IEP.  None of these disputed facts are material to whether the School District violated Plaintiff's rights under the Equal Protection Clause.  The Defendants' disputed facts involve the design and details of the DP program, including the shorter school day, the credentials of the teachers in the DP program, the circumstances surrounding Plaintiff's transfer back to Rio Rancho High School, and the Defendant's response to the memo dated September 18, 2002 from the State of New Mexico.  Likewise, none of these disputed facts are material to whether the School District violated Plaintiff's rights under the Equal Protection Clause.

MATERIAL ISSUES RELEVANT TO EQUAL PROTECTION CLAIMS

Evidence that Plaintiff has presented in his Statement of Additional Facts in support of his Equal Protection Clause claims primarily involves the memo received by the School District dated September 18, 2002 from the State Director of Special Education, Department of Education, State of New Mexico.  The memo states that "our state over-identifies African-American students as being students with disabilities ... .  In addition, our state disproportionally segregates these students while providing special education services."  The memo asked each school district notified of over-identification or over-segregation of certain racial groups to decide on a district strategy to address the over-representation.  (Exhibit L, Plaintiff's Response to Motion for Summary Judgment, Doc. No. 56).

The Rio Rancho School District was not one of the districts that had over-identified African-American students as having disabilities but was one of the districts that had disproportionately segregated African-American students in the most restrictive setting, Setting 3. The State Director of Special Education identified 3.7% of all students in the Rio Rancho Public Schools as being African-American. The acceptable range for African-American students placed in the most restrictive setting, Setting 3, would have been between 3 and 4.4% but stood, on the 120th day of the 2001-2002 school year, at 5.8%.

Plaintiff argues that the evidence of disproportionate segregation in the Desert Pathways program was even more pronounced than these statistics show. Plaintiff points to testimony that in 2001, 3 out of the 22 students placed at Desert Pathways (the most restrictive setting in the Rio Rancho School District for middle and high school students) or almost 14% (3 divided by 22) were African-American, which is substantially more than the acceptable range of between 3 and 4.4%. Defendants do not dispute this memo or the statistics presented by the Plaintiff of over-segregation. However, Defendants argue that this evidence alone is insufficient to support Plaintiff's claim of equal protection violation.

## EQUAL PROTECTION CLAIMS

Plaintiff claims that his equal protection rights to a free and appropriate education were violated on the basis of his race. He argues that 1) the fact that the decision to move him to the Desert Pathways program was in conformity with the School District's historic practice of disproportionate segregation of African-American students in Setting 3 placements, and 2) the fact that policies and procedures in place for other similarly situated students were not applied to

6

him are sufficient to establish that his equal protection rights were violated on the basis of race.

To establish an equal protection claim on the basis of race, the Plaintiff must show both discriminatory impact and discriminatory intent. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252 (1977). Courts recognize, especially in the context of summary judgment motions, that discriminatory intent can be difficult to establish. But to overcome a summary judgment motion, the Plaintiff must present evidence that would allow a jury to find that some discriminatory intent was involved in the decision to move him to the Desert Pathways program.

In rare cases, statistical evidence alone can be used to establish discriminatory intent. *See, Gomillion v. Lightfoot*, 364 U.S. 339 (1960); *Yick Wo v. Hopkins*, 118 U.S. 356 (1886). Both of those cases involved egregious examples of what appeared to be on their face racially neutral policies or regulations but which had the impact of practically eliminating a racial group from certain rights. In *Gomillion,* a state legislature had altered the boundaries of a particular city to eliminate 395 of 400 black voters while not eliminating a single white voter. In *Yick Wo*, an ordinance prohibited laundries from being operated in wooden buildings but allowed an exception if the operator secured a permit. When the laundry operators applied for permits all but one of the white applicants were given the permit but none of the over 200 Chinese applicants were given the permit.

This is not that rare case. Neither statistic, that 5.8% of all African-American students in the Rio Rancho School District were in a Level 3 program or that 14% of the students in the Desert Pathways program were African-American is egregious enough to allow a jury to find, on the basis of this evidence alone, that Respondents had the requisite discriminatory intent and that

Defendants violated Plaintiff's equal rights on the basis of race when he was placed in the Desert Pathways program.

Even assuming, for the purposes of this motion, that the statistical evidence cited by Plaintiff is sufficient to allow a jury to find that a discriminatory impact existed on African-American students when decisions were made whether to place them in Level 3 educational settings, the Plaintiff still has the burden of providing evidence that purposeful discrimination existed in his case when the decision was made to place him in the Desert Pathways program. His burden of proof is similar to that of the defendant in *McCleskey v. Kemp*, 481 U.S. 279 (1987). McCleskey was a black defendant who had been sentenced to death for the crime of murdering a white victim. McCleskey cited statistical evidence to the courts which tended to show that black defendants who murdered white victims in his state were more likely to receive the death penalty than other defendants. The Supreme Court wrote that the sophisticated statistical evidence could "only demonstrate a risk that the factor of race entered into some capital sentencing decisions" in this state. *McCleskey, supra,* at 291, fn. 7, (emphasis in original). The statistical evidence, standing alone, did not fulfill the defendant's burden. "[T]o prevail under the Equal Protection Clause, McCleskey must prove that the decisionmakers in his case acted with discriminatory purpose." *McCleskey, supra,* at 292, (emphasis in original). Since the defendant had no such evidence, the defendant was unable to prevail on his Fourteenth Amendment claim. Likewise, Plaintiff in this case has presented no evidence that the decisionmakers acted with discriminatory purpose when they reached the decision to place him in the Desert Pathways program.

Plaintiff also contends that his rights to equal protection were violated because the Defendants, who applied policies and procedures required by the Individuals with Disabilities

Education Act to other disabled students, did not apply those same policies and procedures to him because of his race.  The Fourteenth Amendment directs that all persons similarly situated should be treated alike.  *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432 (1985).  The Plaintiff has the burden of providing evidence that not only was he treated differently than others who were similarly situated to him, but that the different treatment was motivated, at least in part, by his race.  *Washington v. Davis*, 426 U.S. 229 (1976).  Plaintiff has presented no evidence first, of similarly situated students, and secondly, that any alleged different treatment of him was motivated by race.  The only evidence to which Plaintiff cites is the remark by the principal of Rio Rancho High School that he treats each student accused of committing an aggressive act at the high school on an individual basis.  There is no evidence in the record of similarly situated special education students who were treated in a different manner than Plaintiff and no evidence that even if such students were treated differently; e.g., given individual consideration, that the different treatment was motivated by race.

## CONCLUSION

The Defendants have met their burden showing there is an absence of evidence to support Plaintiff's case. Plaintiff is unable to show that there is a genuine issue for trial on the equal protection claims.  Therefore, summary judgment is entered in favor of the Defendants Rio Rancho Public School District and Board of Education of the Rio Rancho Public Schools and against Plaintiff T.J. Ellis on the equal protection claims contained in the Fourth and Fifth Claims of the Complaint in CV 03-1085.   Summary judgment is also entered in favor of Defendants  Rio Rancho Public School District and Board of Education of the Rio Rancho Public Schools with

respect to the claims of Jessica Ellis and Travis Ellis in CV 03-1085 and CV 03-1086.  Jessica Ellis and Travis Ellis are also dismissed as Defendants in CV 03-1092.

 

                                                                         _____
ALAN C. TORGERSON
UNITED STATES MAGISTRATE JUDGE,
PRESIDING JUDGE